**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF GEORGIA**
**VALDOSTA DIVISION**

WAYNE LINDSEY,                          *

      Petitioner,                     *

                                    CASE NO. 7:00-CR-12 WLS

v.                                      *           28 U.S.C. § 2255
                                      CASE NO. 7:08-CV-90031 WLS

UNITED STATES OF AMERICA,               *

      Respondent.                     *

## REPORT AND RECOMMENDATION

A seventy-two count indictment returned in this court on May 16, 2000, charged Petitioner Wayne Lindsey and other defendants with offenses related to the operation of a "Ponzi scheme to sell promissory notes with no source of income other than the investors' funds." *United States v. Cawthon*, No. 02-12360, slip op. at 2 (11th Cir. Aug. 6, 2003) (per curiam). Specifically, Petitioner Wayne Lindsey was charged in Count One with Conspiracy to Defraud, Counts Two through Ten and Counts Thirty-six through Forty with Mail Fraud, Counts Eleven through Twenty-three and Counts Forty-one through Forty-seven with Wire Fraud, Counts Twenty-four through Thirty-five and Counts Forty-eight through Fifty-one with Securities Fraud, and Count Fifty-two with Conspiracy to Launder the Proceeds of an Unlawful Activity. (Doc. 460, pp. 2-3). Petitioner Lindsey was arraigned on May 31, 2000, and pled not guilty. (Doc. 8). Petitioner, along with his co-defendants, was tried from January 22, 2002 to January 31, 2002, and found guilty on all counts charged. (Doc. 215). On April 19, 2002, Petitioner was sentenced to a total term of imprisonment of 210 months,

to be followed by three years of supervised release, and was ordered to pay restitution in the amount of $2,157,776.06.  (Doc. 255).

Petitioner Wayne Lindsey timely appealed his conviction, which was affirmed by the United States Court of Appeals for the Eleventh Circuit on August 6, 2003, except for remand for re-sentencing as to Count Fifty-two.  (Docs. 317, 340).   Petitioner was re-sentenced on Count Fifty-two ultimately to the same total term of imprisonment of 210 months, three years of supervised release, and restitution in the amount of $2,157,776.06. (Doc. 340).  Petitioner appealed his re-sentencing, with the Circuit Court affirming the same on October 13, 2006. (Doc. 391).  Thereafter, on October 17, 2008, Petitioner filed a Motion To Vacate, Set Aside, or Correct Sentence Pursuant to 28 U.S.C. § 2255. (Docs. 459, 460).[1]

## Discussion of Petitioner's Claims

### I.   Ineffective Assistance of Trial Counsel

To prevail on a claim of ineffective assistance of counsel, a movant bears the burden of establishing by a preponderance of the evidence that his attorney's performance was deficient and that he was prejudiced by the inadequate performance. *Strickland v. Washington*, 466 U.S. 668 (1984); *Chandler v. United States*, 218 F.3d 1305 (11th Cir. 2000). To establish deficient performance, a defendant must prove that his counsel's performance was unreasonable under prevailing professional norms and that the challenged action was not sound strategy. There is a strong presumption that the challenged action

---

[1]On September 17, 2009, the court granted Petitioner's Motion to Amend his Motion to Vacate. The court will hereinafter refer to the amended brief at Doc. 473.

constituted sound trial strategy. *Chateloin v. Singletary*, 89 F.3d 749 (11th Cir. 1996). In order to show that counsel's performance was unreasonable, a petitioner must show that no competent counsel would have taken the action in question. *Van Poyck v. Fla. Dep't of Corrections*, 290 F.3d 1318 (11th Cir. 2002). To satisfy the prejudice prong, a petitioner must show that there is a reasonable probability that, but for counsel's inadequate representation, the proceedings would have been different. *Meeks v. Moore*, 216 F.3d 951 (11th Cir. 2000), *Mills v. Singletary*, 63 F.3d 999 (11th Cir. 1995). If a defendant fails to establish that he suffered prejudice as a consequence of the alleged ineffective assistance, a court need not address the performance prong of the *Strickland* test. *Holiday v. Haley*, 209 F.3d 1243 (11th Cir. 2000).

Counsel cannot be considered ineffective for failing to raise claims that lack merit. *See Alvord v. Wainwright,* 725 F.2d 1282, 1291 (11th Cir. 1984). The Eleventh Circuit Court of Appeals stated in *Rogers v. Zant,* 13 F.3d 384, 386 (11th Cir. 1994):

> The cases in which habeas petitioners can properly prevail on the ground of ineffective assistance of counsel are few and far between. "The benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." *Strickland v. Washington*, 466 U.S. 668, 686, 104 S. Ct. 2052, 2064 (1984). To establish prejudice, the Petitioner must "show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceedings would have been different." *Id.* at 694 . . . . When reviewing whether an attorney is ineffective, courts "should always presume strongly that counsel's performance was reasonable and adequate." *Atkins v. Singletary*, 965 F. 2d 952, 958 (11th Cir. 1992).

**A.      Counsel was unconstitutionally ineffective for failing to communicate favorable plea offers from the United States.**

In his first claim, Petitioner contends that his trial counsel, David Perry, was constitutionally ineffective for failing to inform his clients that a plea deal had been offered to them. (Doc 473, p. 7).

With regard to this very issue, federal courts throughout the United States have unanimously held that counsel is constitutionally ineffective in failing to communicate the existence and terms of a plea offer to his client. *See Cullen v. United States,* 194 F.3d 401 (2nd Cir. 1999); *United States v. Blaylock,* 20 F.3d 1458 (9th Cir. 1994); *Diaz v. United States,* 930 F.2d 832 (11th Cir. 1991) (citing *Johnson v. Duckworth,* 793 F.2d 898, 902 (7th Cir. 1986), *cert. denied,* 479 U.S. 937 (1986) (client must be involved in decision to accept or reject plea offer, and failure to inform client of offer constitutes ineffective assistance)).

However, the record establishes that on March 1, 2001, at the pre-trial hearing in this case at which Petitioner was in attendance, the United States Attorney notified the court of the plea offers made to each of the defendants. (Doc. 152). Petitioner was also notified at that time of the possibility that upon their pleas of guilty, "of the Government filing a 5(k) motion based on their cooperation." *Id.* at 12. The transcript of the hearing further reveals that his counsel stated that the government's plea deal had been discussed with Petitioner and ultimately rejected. *Id.* at 16. Furthermore, the government laid out exactly what the plea offer was during the hearing. *Id.* at 12-15. As such, even if Petitioner was unaware of a plea offer prior to March 1, 2001, he was not so uninformed thereafter. Petitioner, however, as

4

was his right, chose to proceed to trial.  Thus, Petitioner's contention that his counsel was

ineffective for failing to inform him of any formal plea offer is factually without basis and

therefore without merit.

> **B.      Counsel was unconstitutionally ineffective for failing to object to a duplicitous count and/or the imposition of a sentence in excess of the statutory maximum of the lesser object of an ambiguous count of conviction.**

Petitioner next argues that his counsel failed at both his initial sentencing and his re-

sentencing to object to the court's imposition of a "sentence above the *Apprendi*, 530 U.S.

466 (2000) based statutory maximum of ten (10) years for the ambiguous Count 52 charging

violation of 18 U.S.C. § 1956(h)." ( Doc. 473, p. 9).  As an initial matter, it has already been

established that Petitioner was charged and convicted pursuant to 18 U.S.C. §

1956(a)(1)(A)(I), and as such, there is no ambiguity as to Count 52, for which Petitioner was

sentenced to serve 210 months imprisonment, to be followed by three years of supervised

release, and restitution in the amount of $2,157,776.06.

Petitioner's belief that case law mandates that he be sentenced according to the lesser

statutory maximum is misguided at best. The *Apprendi* rule, as stated by the Supreme Court,

holds that, "[o]ther than the fact of a prior conviction, any fact that increases the penalty for

a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved

beyond a reasonable doubt." *Apprendi v. New Jersey,* 530 U.S. 466 (2000).

In his charge to the jury, the court specifically referenced the charge of money

laundering in violation of 18 U.S.C. § 1956(a)(1)(A)(I), and the jury convicted Petitioner of

the same.  Petitioner appealed his conviction and the Eleventh Circuit Court of Appeals remanded the case for re-sentencing "where the district court failed to find beyond a reasonable doubt which offense in the multiple-count indictment the defendants conspired to commit." (Doc. 446-3, p. 12).  At his resentencing, the court specified that it found that the defendants "conspired to launder monetary instruments in violation of 18 U.S.C. § 1956(a)(1)(A).  That violation was an object of Count 52 which charged a conspiracy to launder monetary instruments in violation of 18 U.S.C. § 1956(h)."  (Doc. 342).

Assuming arguendo that *Apprendi* does apply to Petitioner's § 2255 action, its provisions are limited to sentences which exceed the statutory maximum.  *Apprendi,* 530 U.S. at 487 n.13.  The statutory maximum sentence for a violation of 18 U.S.C. § 1956 is twenty years (240 months).  In this case, Petitioner was re-sentenced to 210 months, a sentence which was affirmed by the Eleventh Circuit.  In other words, Petitioner Lindsey's sentence did not exceed the maximum authorized by the jury verdict; thus, there was no *Apprendi* violation. It follows that counsel could not have rendered ineffective assistance by failing to raise what would have ultimately been a meritless *Apprendi*-based claim.

After his re-sentencing, Petitioner filed a second appeal to the Eleventh Circuit, wherein he first alleges a violation of *Apprendi.  See United States v. Lindsey,* 200 F. App'x. 902 (11th Cir. 2002).  The appellate court determined that "the defendants did not raise any *Apprendi* arguments at their initial sentencing hearing even though such arguments were available to them.  Accordingly, the defendants have waived their ability to raise *Apprendi* error in this appeal . . . ." *Id.*

6

Under the procedural default rule, a defendant generally must advance an available challenge to a criminal conviction or sentence on direct appeal or else the defendant is barred from presenting that claim in a § 2255 proceeding. *McCoy v. United States,* 266 F.3d 1245, 1258 (11th Cir. 2001); *Jones v. United States,* 153 F.3d 1305, 1307 (11th Cir. 1998). This rule generally applies to all claims, including constitutional claims. *See Reed v. Farley*, 512 U.S. 339, 354, 114 S. Ct. 2291, 2300 (1994) ("Where the petitioner – whether a state or federal prisoner – failed properly to raise his claim on direct review, the writ is available only if the petitioner establishes cause for the waiver and shows actual prejudice resulting from the alleged violation.").

> A defendant can avoid a procedural bar only by establishing one of the two exceptions to the procedural default rule. Under the first exception, a defendant must show cause for not raising the claim of error on direct appeal *and* actual prejudice from the alleged error. *Brousley v. United States,* 523 U.S. 614, 622 (1998); *Mills v. United States,* 36 F.3d 1052, 1055 (11th Cir. 1994).
> . . .
>   In procedural default cases, the question is not whether legal developments or new evidence has made a claim easier or better, but whether at the time of the direct appeal the claim was available at all. *See, e.g., Smith v. Murray,* 477 U.S. 527, 534 (1986); *McCoy v. Newsome,* 953 F.2d 1252, 1258 (11th Cir. 1992). . . . *See Smith v. Jones,* 256, F.3d 1135, 1145 (11th Cir. 2001)(noting "that 'the existence of cause for a procedural default must ordinarily turn on whether a prisoner can show that some objective factor external to the defense impeded counsel's efforts to comply with the procedural rule' " (quoting *Murray v. Carrier,* 477 U.S. at 488, 106 S. Ct. at 2645)); *Johnson v. Alabama,* 256 F.3d 1156, 1171 (11th Cir. 2001).

*Lynn v. United States,* 365 F.3d 1234, 1235 (11th Cir. 2004).

Accordingly, Petitioner is procedurally barred from raising said claim in his § 2255 motion, and his assertion that his counsel was ineffective for failing to raise possible violations of *Apprendi* must fail.

C.   **A severe conflict of interest developed due to the fact that counsel Perry refused to discuss any terms of a specific plea and shielded Lindsey from any contact with McCommon.**

Petitioner next argues that because John Perry, a co-defendant and the son of Petitioner's trial counsel, David Perry, wished to go to trial, a conflict of interest arose, "thereby rendering ineffective assistance of counsel and causing prejudice to Lindsey." (Doc. 473, p. 10).

A review of the record establishes, and Petitioner admits, a potential conflict of interest issue was raised during a pre-trial conference on September 14, 2000 (Doc. 127 and Doc. 550, p. 17), wherein Petitioner waived any potential conflict.  Furthermore, following his first trial, wherein a mistrial was declared, Petitioner sought appointment of new counsel. (Docs. 199, 200).  The court ultimately determined that Petitioner had failed to identify any conflict of interest and that the proceedings had progressed too far at that point to change attorneys.  (Doc. 201).

As discussed *supra*, nonetheless, claims not raised on direct appeal are defaulted unless Petitioner is able to show cause for not raising the claim of error on direct appeal *and* actual prejudice from the alleged error.  *Brousley,* 523 U.S. at 622.  Petitioner failed to raise this issue in his direct appeal and cites no justification for his failure to do so.  The court is, therefore, without the authority to review this claim.

8

**D.      Counsel was constitutionally ineffective for failing to object to the Court's erroneous instruction to the jury regarding Count Fifty-two.**

Petitioner next contends that during his trial, the court gave "incomplete and partially inaccurate instruction[s] of the jury" to which his counsel failed to object.  (Doc. 473, p. 11). He argues that due to the improper jury instructions, he was convicted of crimes not charged in his indictment.  *Id.* at 12.   Petitioner's initial assumption that he was charged in Count 52 of the indictment with only a violation of 18 U.S.C. § 1956(h) is inexact.  The indictment with which Petitioner was specifically charged states in Count Fifty-two, that:

> On or about November of 1996, the exact date being unknown to the Grand Jury, and continuing to on or about the 20th day of June 1997, in the Valdosta Division of the Middle District of Georgia and elsewhere, the defendants . . . and others both known and unknown to the Grand Jury, knowingly conspired and agreed together and with each other, and with others both known and unknown to the Grand Jury, to commit offenses under Title 18, United States Code, Sections 1956 and 1957, that is:
> (1) to conduct and attempt to conduct a financial transaction affecting interstate commerce, which transaction involved the proceeds of specified unlawful activity, that is, mail fraud and wire fraud, with the intent to promote the carrying on of such specified unlawful activity, and that while conducting and attempting to conduct such financial transaction knew that the property involved in the financial transaction represented the proceeds of some form of unlawful activity, in violation of Title 18, United States Code, Section 1956(a)(1)(A)(I); and
> (2) to knowingly engage and attempt to engage in a monetary transaction in criminally derived property that was of a value greater than

> $10,000.00 and was derived from specified
> unlawful activity, that is, mail fraud and wire
> fraud, in violation of Title 18, United States Code,
> Section 1957.

(Doc. 1. pp. 25-26).  In Part C of Count Fifty-two, Petitioner was charged with a violation of subsection (h) of 18 U.S.C. § 1956 to establish the "manner and means" of the money laundering conspiracy pursuant, which states that "[a]ny person who conspires to commit any offense defined in this section or section 1957 shall be subject to the same penalties as those prescribed for the offense the commission of which was the object of the conspiracy."  (Doc. 1, p. 27).

Petitioner uses that claim to further argue that the court confused 18 U.S.C. § 1956(h) with 18 U.S.C. § 371[2]; "mischaracterized" or "misapprehended" Count 52 "as if it was a substantive charge"; confused Count 52 with Count 53 in giving the jury instructions; and mistakenly charged the jury as to an offense, 18 U.S.C. § 1956(a)(1)(a)(I), with which he claims he was not charged. (Doc. 460, p. 12 and Doc. 473, p. 12 ).  Petitioner, however, is incorrect as to each of his claims.  First, the court gave proper jury instructions as to Count 52, providing the jury with the elements of money laundering in violation of 18 U.S.C. § 1956.  Furthermore, upon resentencing, the court specifically referenced 18 U.S.C. § 1956(a)(1)(A) as the crime upon which Petitioner was found guilty beyond a reasonable

---

[2]18 U.S.C. § 371 is the general criminal conspiracy statute which creates an offense "[i]f two or more persons conspire either to commit any offense against the United States, or to defraud the United States, or any agency thereof in any manner or for any purpose."

doubt.  A thorough review of the record reveals that Petitioner's analysis of the jury instructions given by the court fails to cite any proper authority which would support his conclusions and, thus, is wholly without merit.

"Conclusory claims are not cognizable and therefore do not merit consideration." *United States v. Jones,* 614 F.2d 80 (5th Cir. 1980).  Furthermore, "[c]onclusory allegations of ineffective assistance are insufficient."  *Wilson v. United States,* 962 F.2d 996 (11th Cir. 1992) (citing *United States v. Lawson,* 947 F.2d 849, 853 (7th Cir. 1991)). Having failed to establish that the court erred in providing instructions to the jury, Petitioner cannot show that his counsel's conduct resulted in any prejudice to him, nor can he show that any other attorney would not have acted exactly as Petitioner's trial attorney did in this respect.  Also, having failed to show prejudice, actual, presumptive, or otherwise,  Petitioner's claim lacks merit and should be denied.

**E.     Defendant/ Petitioner is actually innocent of Count 52 based on the Supreme Court's holding in *United States v. Santos*.**

Petitioner next argues that he is "actually innocent of Count 52 based on the Supreme Court's holding in *United States v. Santos*."  (Doc. 473, p. 15).  Petitioner argues that "application of the 'proceeds' definition to the conduct which underlies [his] money laundering conviction results in the realization that [his] conduct no  longer constitutes a violation of the statute."  *Id.*  In *Santos,* the Court weighed "whether the term 'proceeds' used in the federal money-laundering statute, 18 U.S.C. § 1956(a)(1), referred to 'receipts' or 'profits.' " 128 S. Ct. at 2022. At issue in *Santos* was an illegal gambling operation, and the

11

defendant was convicted of money laundering in violation of 18 U.S.C. § 1956. *See id.* at

2022-23.  A plurality of the Justices found that the term "proceeds" was ambiguous and,

applying the rule of lenity, concluded that the term means "profits," and not "gross receipts."

*See id.* at 2023-25. Under the plurality's view, "to establish the proceeds element under the

'profits' interpretation, the prosecution needs to show ... that a single instance of specified

unlawful activity was profitable and gave rise to the money involved in a charged

transaction." *Id.* at 2029.

Carefully analyzing the Supreme Court's decision in *Santos*, the Eleventh Circuit

Court of Appeals upheld the conviction and sentence of a defendant who was convicted of

money laundering in violation of 18 U.S.C. § 1956, holding that:

> *Santos* has limited precedential value. Three parts of Justice
> Scalia's four-part opinion are for plurality of justices, and those
> parts do not state a rule for this case. "When a fragmented Court
> decides a case and no single rationale explaining the result
> enjoys the assent of five Justices, 'the holding of the Court may
> be viewed as that position taken by those Members who
> concurred in the judgments on the narrowest grounds....' " The
> narrow holding in *Santos*, at most, was that the gross receipts of
> an unlicensed gambling operation were not "proceeds" under
> section 1956, but there is no evidence that the funds Demarest
> laundered were gross receipts of an illegal gambling operation.
> The evidence instead established that the laundered funds were
> the proceeds of an enterprise engaged in illegal drug trafficking.

*U.S. v. Demarest,* 570 F.3d 1232, 1242 (11th Cir. 2009).  The Court rejected Demarest's

argument that he did not launder "proceeds" of illegal activity, because the monies at issue

were the "receipts" from the sale of a yacht, not profits. The Court found that because *Santos*

was decided by a plurality of the Supreme Court, its narrow holding regarding proceeds applied only to cases involving gambling operations, and not, as in that case, drug trafficking.

Of note, but not relevant to Petitioner's case, is that on May 20, 2009, President Obama signed into law the Fraud Enforcement and Recovery Act of 2009 ("FERA"), which, in relevant part, amends 18 U.S.C. § 1956 by adding subsection (c)(9) to define proceeds as "any property derived from or obtained or retained, directly or indirectly, through some form of unlawful activity, including the gross receipts of such activity." 18 U.S.C. 1956(c)(9); Pub. L. No. 111-21 § (2)(f)(1) (May 20, 2009). The FERA legislation has effectively overruled the plurality decision in *Santos*, and any prior ambiguity as to the meaning of "proceeds" has now been resolved. Therefore, under all circumstances, Petitioner's claim that the holding in *Santos* rendered his conviction null and void is incorrect, and his collateral attack under *Santos* fails.

**F.    Counsel was ineffective for failing to object to the imposition of a sentence in excess of the maximum as authorized by 18 U.S.C. § 3581.**

Petitioner next argues that his trial counsel was ineffective for failing to object to his 210 month sentence, which he claims was in violation of 18 U.S.C. § 3581, which he notes "sets the authorized prison sentence for crimes falling within each letter grade classification." (Doc. 473, p. 17). Petitioner specifically refers to 18 U.S.C. § 3581(b) which states that the authorized term of imprisonment for a Class C felony is not more than twelve years. *Id.* However, as was unequivocally stated *supra*, the maximum sentence for a violation of 18 U.S.C. § 1956, which Petitioner was convicted of violating, is twenty years. Furthermore,

13

as the Respondent correctly notes, any reference to 18 U.S.C. § 3581 indicates that a violation of § 1956 is a Class B felony, authorizing a sentence of not more than twenty-five years. Because Petitioner's sentence was for 210 months (17.5 years) there is no violation of § 3581. It follows, then, that his counsel was not ineffective for failing to raise a meritless claim.

**G.     Counsel was ineffective for not objecting to the amount and/or method of setting restitution.**

Petitioner's next issue claims that his counsel was ineffective for failing to object to the amount of restitution he was ordered to pay and that amount was determined. (Doc. 473, p. 18). The Eleventh Circuit Court of Appeals has held, however, that a *pro se* federal prisoner may not utilize a § 2255 motion to vacate sentence to challenge his restitution order. *Mamone v. United States,* 559 F.3d 1209, 1211 (11th Cir. 2009). Therefore, Petitioner's claim must fail.

**II.     Ineffective Assistance of Appellate Counsel**

Petitioner has alleged several claims of ineffective assistance of counsel as to counsel's representation of him on appeal. (Doc. 473, p. 19). The Eleventh Circuit Court of Appeals has held that the *Strickland* standard applies to ineffective assistance of appellate counsel claims. *Heath v. Jones,* 941 F.2d 1126, 1130 (11th Cir. 1991), *cert. denied*, 502 U.S. 1077 (1992). To prevail on such claims, a Petitioner must show that his appellate counsel's performance was deficient and that this performance prejudiced the defense. *Id.*

**A.     Appellate counsel was constitutionally ineffective for failing to appeal the court's erroneous instruction of the jury, and the subsequent constructive**

14

amendment of the indictment by the court, to include the substantive offense of money laundering.

**B.**     **Appellate counsel was constitutionally ineffective for failing to appeal the sentence imposed on Count 52 on the basis that it exceeded the statutory maximum of the lesser object of Count 52, where the jury verdict was ambiguous as to the object of Count 52.**

In this case, Petitioner was represented by the same counsel at trial and on appeal.  In his ineffective assistance of appellate counsel claims, Petitioner makes identical claims of error on the part of Mr. David Perry as were argued in his claims of ineffective assistance of trial counsel.  Because no error was found with regard to the trial court's jury instructions nor the court's resentencing of Petitioner, there is no need to analyze those claims a second time. Petitioner's claims of ineffective assistance of appellate counsel must, therefore, fail.

## III.  Pending Motions

Petitioner has filed motions in this case which are pending, including a Motion for Evidentiary Hearing (Doc. 473, p. 24) and a Motion for Judicial Estoppel (Doc. 555).

The district court need not hold an evidentiary hearing every time a section 2255 claim of ineffective assistance is raised. "A hearing is not required on patently frivolous claims or those which are based upon unsupported generalizations. Nor is a hearing required where the Petitioner's allegations are affirmatively contradicted in the record." *Holmes v. United States*, 876 F. 2d 1545, 1553 (11th Cir. 1989).

In his Motion for Judicial Estoppel, Petitioner seeks to have the court enjoin Respondent from arguing "that there can be two definitions of 'proceeds'" in the context of 18 U.S.C. § 1956(a)(1)(A).  (Doc. 555, p. 2).  It is the court's finding, however, as noted

above, that the definition of proceeds, following the United States Supreme Court's decision in *United States v. Santos*, was first clarified in *United States v. Demarest,* 570 F.3d 1232, 1242 (11th Cir. 2009), and further clarified in the Fraud Enforcement and Recovery Act of 2009.  Therefore, it is recommended that any pending motions in this case be DENIED.

**WHEREFORE, IT IS RECOMMENDED** that Petitioner Lindsey's Motion To Vacate, Set Aside, or Correct Sentence Pursuant to 28 U.S.C. § 2255 be DENIED.  Pursuant to 28 U.S.C. § 636 (b)(1), Petitioner may serve and file written objections to this Recommendation with the UNITED STATES DISTRICT JUDGE, WITHIN FOURTEEN (14) DAYS after being served with a copy hereof.

**SO RECOMMENDED** this 19th day of March, 2010.


S/ G. MALLON FAIRCLOTH
UNITED STATES MALLON FAIRCLOTH


eSw

16